**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

DAVID LEWIS,                          :
       Plaintiff,                  :               CIVIL CASE NO.
                                    :               3:19-CV-01454 (JCH)
                                    :
v.                                    :
                                    :
ROLLIN COOK, ET AL.                   :               September 30, 2021
       Defendants.                 :

**RULING ON MOTION FOR SUMMARY JUDGMENT**
**(DOC. NO. 56)**

## I.  INTRODUCTION

The plaintiff, David Lewis ("Lewis"), an inmate under the custody of the

Connecticut Department of Corrections ("DOC"), brings this action under section 1983

of title 42 of the U.S. Code challenging his placement in the Security Risk Group

("SRG") Program and his subsequent conditions of confinement.  Lewis names the

following defendants: Rollin Cook ("Cook"), Former Commissioner of the DOC; Scott

Semple ("Semple"), Former Commissioner of the DOC; Antonio Santiago ("Santiago"),

Director of Security for DOC; John Aldi ("Aldi"), Former SRG Coordinator for DOC;

Papoosha ("Papoosha"), Current SRG Coordinator for DOC; William Mulligan

("Mulligan"), Former Warden of MacDougall-Walker Correctional Institution

("MacDougal-Walker CI"); Nick Rodriguez ("Rodriguez"), Warden of Northern

Correctional Institution ("Northern CI"); David Maiaga ("Maiaga"), Director of

Classification and Population Management for DOC; Brian Jackson ("Jackson"),

Captain at Northern CI; Stanley ("Stanley"), Unit Manager at MacDougall-Walker CI;

and Keith Lizon ("Lizon"), Unit Manager at Northern CI.

1

Pending before the court is the defendants' Motion for Summary Judgment (Doc. No. 56).  For the following reasons, the defendants' Motion is granted in part and denied in part.

## II.    BACKGROUND

### A.    Factual Background

#### 1.    SRG Program

Lewis' claims relate to his 2018 assignment to DOC's SRG Program.  In an attempt to address DOC's "gang problem", the SRG Program segregates high-security-risk inmates who are found to be SRG members, placing them on "SRG Status" and removing them from the general population.  Defs.' Local Rule 56(a)(1) Statement at ¶¶ 3, 5, 65 ("Defs.' L.R. Stmt.") (Doc. No. 60-1); Pl.'s Local Rule 56(a)(1) Statement at ¶¶ A3, A5, A65 ("Pl.'s L.R. Stmt.") (Doc. No. 60-1).[1]

When an inmate is placed on SRG status, he enters a five-phase Program designed to separate him from the general population and dissociate him from his SRG.  Defs.' L.R. Stmt. at ¶ 5; Pl.'s L.R. Stmt. at ¶ A5.  To advance from phase to phase, an inmate must follow the rules and avoid receiving disciplinary reports.  Defs.' L.R. Stmt. at ¶ 29; Pl.'s L.R. Stmt. at ¶ A29.  Once an inmate completes all five phases, he can renounce his SRG affiliation and rejoin DOC's general population.  Defs.' L.R. Stmt. at ¶ 5; Pl.'s L.R. Stmt. at ¶ A5.

---

[1] Lewis' Local Rule 56(a)(1) Statement includes one set of paragraphs numbered one through seventy-five and a second set of paragraphs numbered one through nineteen. To avoid confusion, the court refers to the first set of paragraphs, which respond to the defendant's Local Rule 56(a)(1) statement, as ¶¶ A1-A75. The second set of paragraphs, in which Lewis offers additional material facts, are referred to as ¶¶ B1-B19.

In Phase One, the most restrictive phase, inmates are forced to wear restraints any time they leave their cells.  Defs.' L.R. Stmt. at ¶ 52; Pl.'s L.R. Stmt. at ¶ A52.  They are subjected to strip searches before recreation and remain in restraints while at recreation.  Defs.' L.R. Stmt. at ¶ 54; Pl.'s L.R. Stmt. at ¶ A54. They cannot attend group programs while in Phase One.  Defs.' L.R. Stmt. at ¶ 55; Pl.'s L.R. Stmt. at ¶ A55.

In Phase Two, a slightly less restrictive status than Phase One, inmates are permitted only one hour of out-of-cell recreation each day.  Defs.' L.R. Stmt. at ¶ 38; Pl.'s L.R. Stmt. at ¶ A38.  They are limited to three showers, three phone calls, and two noncontact visits per week, and they eat all meals in their cells.  Defs.' L.R. Stmt. at ¶ 38; Pl.'s L.R. Stmt. at ¶ A38.  In their cells, Phase Two inmates are allowed only five cubic feet of personal property and are denied televisions.  Defs.' L.R. Stmt. at ¶¶ 45, 47; Pl.'s L.R. Stmt. at ¶¶ A45, A47.

If an inmate who is on active SRG status is discharged from DOC and then readmitted, DOC uses a process termed the "90-Day Review" to determine whether the readmitted inmate should continue on SRG status.  Defs.' L.R. Stmt. at ¶ 6; Pl.'s L.R. Stmt. at ¶ A6.  In the 90-Day Review process, DOC's Security Division reviews the inmate's SRG file shortly after he is readmitted.  Defs.' L.R. Stmt. at ¶ 7; Pl.'s L.R. Stmt. at ¶ A7.  The SRG file includes the inmate's disciplinary reports, incident reports, and SRG status records.  Id.  If, after review, the Security Division determines that the inmate should be considered for continued SRG status, they send the "Security Risk Group Member 90-Day Review" form to the Intelligence Unit, which notifies the inmate that they are considering him for continued placement on SRG status.  Defs.' L.R. Stmt. at ¶ 10; Pl.'s L.R. Stmt. at ¶ A10.  The Intelligence Officer meets with the inmate to

notify him and provide him with the opportunity to oppose his continued placement on SRG status. Defs.' L.R. Stmt. at ¶ 11-12; Pl.'s L.R. Stmt. at ¶ A11-A12. If the inmate objects to his SRG status, then the Intelligence Officer informs Commissioner Aldi, who considers the inmate's reasons in relation to his SRG records and decides whether to continue his SRG status. Defs.' L.R. Stmt. at ¶ 12-14; Pl.'s L.R. Stmt. at ¶ A12-A14. Ultimately, Commissioner Aldi determines whether the inmate will be designated to the SRG Program, documenting his decision on the "Security Risk Group Member 90-Day Review" form. Defs.' L.R. Stmt. at ¶ 15; Pl.'s L.R. Stmt. at ¶ A15. This form, which is provided to the inmate, also offers instructions for appealing the decision. Id.

While the defendants assert that "SRG status is not meant to punish inmates for their affiliation with security risk groups", Defs.' L.R. Stmt. at ¶ 4, Lewis contends that SRG status "is punitive and nothing more", as inmates "receive no rehabilitation", there are "no groups, no classes, no attempts to teach skills", and inmates are "handcuffed, shackled, and tethered." Pl.'s L.R. Stmt. at ¶ 16.

### 2.     Lewis' Previous Incarceration and SRG Determination

Lewis testified that he has been in and out of DOC custody at various correctional institutions since around 2005. Pl.'s Depo. at 9 (Doc. No. 60-2). He first pleaded guilty to SRG affiliation with the Crips in 2012, he testified, after receiving a disciplinary ticket for a fight at Osborn CI. Pl.'s Depo. at 10-14 (Doc. No. 60-2); see Aldi's Decl. at Att. A (Doc No. 56-3). As a result of the fight and guilty plea, he was placed on SRG status. Defs.' L.R. Stmt. at ¶ 42; Pl.'s L.R. Stmt. at ¶ A42. Lewis remained on SRG status, although his SRG status was interrupted at times when he was placed on Administrative Segregation status or discharged from custody. Defs.' L.R. Stmt. at ¶ 27; Pl.'s L.R. Stmt. at ¶ A27.

4

From 2012 to 2017, Lewis never successfully completed the requirements for removal from SRG status.  Defs.' L.R. Stmt. at ¶ 28; Pl.'s L.R. Stmt. at ¶ A28.  During that period, he pleaded guilty to two Disciplinary Reports for SRG affiliation while on SRG status at MacDougall-Walker CI on February 23, 2015 and June 4, 2015.  Defs.' L.R. Stmt. at ¶ 30; Pl.'s L.R. Stmt. at ¶ A30; Aldi's Decl. at Att. C.  The February Report was for gang-related papers found in his cell, although in his testimony, Lewis denied that those materials belonged to him.  Pl.'s Depo. at 24.  As for the June Report, Lewis received it when, after attempting to swallow a razor and being confined to a mental health observation room, he made Crips-affiliated hand signs toward the room's video camera.  Aldi's Decl. at Att. C.

Lewis was discharged from DOC custody in 2017, but he was returned to custody in March 2018.  Pl.'s Depo. at 24.

### 3.    Lewis' Subsequent Arrest and Return to SRG

Lewis was arrested and entered Bridgeport Correctional Center on March 15, 2018, when he was temporarily placed on Administrative Detention status.  Defs.' L.R. Stmt. at ¶ 17; Pl.'s L.R. Stmt. at ¶ A17.  Shortly thereafter, he was returned to Phase Two of the SRG Program.  Defs.' L.R. Stmt. at ¶ 44; Pl.'s L.R. Stmt. at ¶ A44.

The parties dispute whether Lewis received sufficient process when he was placed on SRG status upon his readmittance to DOC.  The record shows that Lewis did not have a hearing when he was reassigned to the SRG Program in March 2018, but his file was subject to a 90-Day Review.  See Tardif's Decl. at Att. A (Doc. No. 56-4).  Lewis signed a 90-day Review Notice form dated March 16, 2018, which stated that a review of his status would take place that day.  Id.  On the same date, he also signed a Security Risk Group Member 90-Day Review form indicating that his SRG file had been

5

reviewed and that his SRG designation as a member of the Crips would remain in effect.  Id.  The Security Risk Group Member 90-Day Review form also listed a staff witness, Intelligence Officer Tardif, who testifies that he was responsible for meeting with Mr. Lewis but does not recall their meeting.  Tardif's Decl. at ¶ 5.  The form further noted that Lewis could "appeal this designation to the District Administrator within 15 days of the receipt of this notification in accordance with Administrative Directive 9.6, Inmate Administrative remedies." Id. at Att. A.  Lewis did not file an appeal.  Defs.' L.R. Stmt. at ¶ 75; Pl.'s L.R. Stmt. at ¶ A75; Pl.'s Depo. at 44-45.[2]

Once Lewis received his SRG designation, he was moved to MacDougall-Walker CI, which housed Phase Two inmates.  Defs.' L.R. Stmt. at ¶ 35; Pl.'s L.R. Stmt. at ¶ A35.  While at MacDougall-Walker, Lewis asserts that, in addition to the typical Phase Two restraints, he was denied family visits or access to his medication.  Pl.'s L.R. Stmt. at ¶ B12; Pl.'s Depo. at 49.  During recreation time, he testifies, he was handcuffed behind his back with shackles binding his feet.  Id.; Pl.'s Depo. at 49.  These conditions caused him severe emotional distress and exacerbated his pre-existing mental health conditions, driving him to attempt to commit suicide.  Pl.'s L.R. Stmt. at ¶ B12.  The defendants contest Lewis' claims, stating that SRG inmates "have heat, electricity, medical care, mental healthcare, food, cleaning supplies on weekends to clean their cells, the ability [to] participate in exercise either in their cells or at recreation, and many other things", Defs.' L.R. Stmt. at ¶ 37, and that Phase Two inmates are "not wearing restraints while out of their cells." Id. at 39.

---

[2] Lewis' apparent failure to exhaust as to his SRG designation is not raised as a basis for summary judgment in the defendants' Memorandum, so the court will not address it.

While in Phase Two, Lewis received disciplinary reports for misconduct including insulting language or behavior, public indecency, threats, interfering with safety and security, and fighting.  Defs.' L.R. Stmt. at ¶ 48; Pl.'s L.R. Stmt. at ¶ A48; Aldi's Decl. at Att. B.  One such report arose out of a September 27, 2018 SRG-related fight between the Crips and the Bloods. Defs.' L.R. Stmt. at ¶ 49; Pl.'s L.R. Stmt. at ¶ A49; Aldi's Decl. at Att. E.  Before the fight, Lewis asserts, he warned Aldi, Stanley, and others in writing that the fight's instigator, gang member Tracy Diaz, had threatened him.  Pl.'s L.R. Stmt. at ¶ B7.  The correctional officials ignored his grievances, he claims and, ultimately, Tracy Diaz attacked Lewis, starting the fight and breaking Lewis' hand.  Id. at ¶¶ B7, B9.

An investigation determined that the fight was "prearranged between both [SRG] affiliations", but the inmates present during the brawl, including Lewis, denied knowing the cause of the fight.  Aldi's Decl. at Att. E.  Lewis testifies that he was not a gang member at the time, and that Diaz "just wanted to fight" with Lewis because he, like the other gang members, did not like Lewis.  Pl.'s Decl. at 31 (Doc. 60-2).  Lewis pleaded guilty to a disciplinary report for fighting, Defs.' L.R. Stmt. at ¶ 50; Pl.'s L.R. Stmt. at ¶ A50; Aldi's Decl. at Att. F, although the disciplinary report did not specify that the fight was SRG-related.  Aldi's Decl. at Att. F.

As a result of the fight, on October 4, 2018, DOC regressed Lewis to Phase One. Defs.' L.R. Stmt. at ¶ 51; Pl.'s L.R. Stmt. at ¶ A51; Aldi's Decl. at Att. G.  In Phase One, he moved to Northern CI, where, he testifies, he was allowed out of his cell for only one hour a day; handcuffed for recreation; limited to three showers a week; denied a television; allowed only limited family visits; and denied access to religious services, school programming, or legal services.  Pl.'s Decl. at 53-54.

Lewis returned to Phase Two at MacDougall-Walker in February 2019.  Defs.' L.R. Stmt. at ¶ 57; Pl.'s L.R. Stmt. at ¶ A57.  He was removed from SRG status to the general population in May 2020.  Defs.' L.R. Stmt. at ¶ 58; Pl.'s L.R. Stmt. at ¶ A58. Currently, he is housed at Cheshire CI.  Defs.' L.R. Stmt. at ¶ 1; Pl.'s L.R. Stmt. at ¶ A1.

Lewis, in testimony and in his statement of facts, denies being a gang member. Pl.'s Depo. at 39.

### 4.  Grievances Filed

Lewis filed a number of grievances related to his SRG status determination and confinement during his time in DOC custody.  Administrative Directive 9.6 ("AD 9.6"), of which the court takes judicial notice, governs DOC's grievance procedures. [3]  See Hesse's Decl. at Att. A (Doc. No. 56-5).  Under AD 9.6, an inmate must first file a level-one grievance within thirty days of the precipitating incident.  Defs.' L.R. Stmt. at ¶ 67; Pl.'s L.R. Stmt. at ¶ A67.  After submitting a level-one grievance, an inmate may file a level-two grievance.  AD 9.6(I), (K); Hesse's Decl. at Att. A.

### a.  Grievances Regarding 2018 SRG Status Determination

Lewis was housed at MacDougall-Walker CI from March 23, 2018, through October 4, 2018, and again from February 21, 2019, through April 23, 2019.  Defs.' L.R. Stmt.  at ¶ 69; Pl.'s L.R. Stmt. at ¶ A69.  He was housed at Northern CI from October 4, 2018, through February 21, 2019.  See Saunders' Decl. at 7 (Doc. No. 56-6).  During his

---

[3] The defendants filed a copy of the version of AD 9.6 that was in effect at the time of the events alleged in Lewis' Complaint. See Hesse's Decl. at Att. A. Because AD 9.6 has since been updated, see Connecticut State Department of Correction, Administrative Directive Chapter 9.6 Inmate Administrative Remedies, available at https://portal.ct.gov/-/media/DOC/Pdf/Ad/ad0906pdf.pdf (last accessed Sept. 29, 2021) (noting that it supersedes the version dated August 15, 2013), the court refers to the version that the defendants attached as an exhibit.

time at Northern CI, he filed seven level-one grievances.[4]  <u>See</u> Saunders' Decl. at Att.

A. Each of these grievances challenged his placement on SRG status, seeking his

removal from the Program.  <u>Id.</u>  The grievances were denied.  <u>Id.</u>  While at MacDougall-

Walker, he appealed six of his seven level-one grievances to level two, again

challenging his designation as an SRG member.[5]  <u>See</u> Hesse's Decl. at Att. A.

### b.    Grievances Regarding Conditions

Two of Lewis' level-two appeals, both received on April 12, 2019, challenged his

SRG designation and mentioned certain restrictive conditions, complaining that he was

unable to "get a [sic] legal [library], visits, phone at [sic] fri[e]nds and family" Hesse's

Decl. at Att. B, IGP 141-19-163, and, again, that he was unable to access the law library

or "proper mental health treatment and programs." <u>Id.</u>  at Att. B, IGP 141-19-178.

### c.    Grievances Regarding Dangers of SRG Housing

Lewis contends that he warned officials at MacDougall Walker that he was in

danger of attack in 2018 before he got in a fight with Diaz.  Pl.'s L.R. Stmt. at ¶ B7.  In

contrast, Administrative Remedies Coordinators at both MacDougall-Walker CI and

Northern CI testify that Lewis submitted no grievances about an incident at MacDougall-

Walker.  Hesse's Decl. at 8; Saunders' Decl. at 10-11.  Lewis, however, submits copies

of two inmate request forms dated July 10, 2018, and September 6, 2018, as well as a

level-one grievance form dated September 22, 2018.  <u>See</u> Pl.'s Mem. at Exs. E (Doc.

---

[4] The grievances were numbered as follows: IGP 141-19-141 (Dec. 7, 2018); IGP 141-19-160 (Dec. 28, 2018); IGP 141-19-161 (Dec. 28, 2018); IGP 141-19-162 (Dec. 28, 2018); IGP 141-19-163 (Dec. 31, 2018); IGP 141-19-178 (Jan. 1, 2019); and IGP 141-19-206 (Feb. 11, 2019).

[5] Lewis filed level-two appeals for the following grievances: IGP 141-19-160 (Mar. 18, 2019); IGP 141-19-161 (Mar. 18, 2019); IGP 141-19-162 (Apr. 12, 2019); IGP 141-19-163 (Apr. 12, 2019); IGP 141-19-178 (Mar. 15, 2019); and IGP 141-19-206 (May 23, 2019). He did not appeal IGP 141-19-141.

No. 60-6), F (Doc. No. 60-7), G (Doc. No. 60-8).  None of the forms indicate that they were sent to, received by, or responded to by any DOC officials.  Id.  In these inmate request forms and grievance, Lewis wrote, "I fe[a]r for my safety" and "[m]urders that's saying they going to kill someone and being that I [am] a pre tri[a]l [detainee] and not a gang member it's going to be me man you are put[t]ing my life in je[o]p[a]rdy."  Pl.'s Mem. at Ex. E; see also id. at Exs. F, G (reiterating the same).  Lewis suggests that these grievances were disregarded, as "grievances often are ignored or lost in the system." Pl.'s L.R. Stmt. at ¶ 18B; Pl.'s Mem. at Ex. B (Doc. No. 60-3).  Lewis submits an affidavit from pre-trial detainee Gregory R. Alvez, who testifies that he has "had problems filing requests and grievances that are not answered or returned." Pl.'s Mem. at Ex. B ¶ 13.

B.     Procedural Background

1.     Lewis' Claims

Lewis filed his Complaint pro se.  See Compl. (Doc. No. 4).  Accordingly, this court issued an Initial Review Order (Doc. No. 9) ("IRO") dismissing some of Lewis' claims and allowing others to proceed.  The following claims are still at issue.

a.     Fourteenth Amendment Substantive Due Process:
Deliberate Indifference to Safety or Failure to Protect

Lewis brings Fourteenth Amendment deliberate indifference to safety or failure to protect claims, alleging that the defendants failed to protect him from assault by a high-ranking gang member at MacDougall-Walker CI.  Id. at 19-20.  He asserts these claims against Commissioner Semple, SRG Coordinators Aldi and Papoosha, Warden Mulligan, and Unit Manager Stanley in their individual capacities for damages.  Id. at 29.

10

       b.     Fourteenth Amendment Substantive Due Process:
             Deliberate Indifference to Conditions

Lewis contends that the defendants were deliberately indifferent to his health and safety in violation of his right to substantive due process.  Id. at 13-14.  His deliberate indifference claims related to MacDougall-Walker proceed against Commissioners Cook and Semple, Director of Security Santiago, Director of Classification and Management Maiaga, SRG Coordinators Aldi and Papoosha, Warden Mulligan, and Unit Manager Stanley in their individual capacities for damages and official capacities for injunctive relief. His deliberate indifference claims related to Northern proceed against Commissioners Cook and Semple, Director of Security Santiago, Director of Classification and Management Maiaga, SRG Coordinators Aldi and Papoosha, Warden Rodriguez, Unit Manager Lizon, and Captain Jackson in their individual capacities for damages and in their official capacities for injunctive relief.  Id. at 29-30.

       c.     Fourteenth Amendment Substantive Due Process: Punitive
             Confinement

Lewis also argues that his conditions of confinement at MacDougall-Walker and Northern, constituted punishment, violating his right to substantive due process.  Id.  at 10. These claims proceed against Commissioners Cook and Semple, Director of Security Santiago, SRG Coordinators Aldi and Papoosha, Wardens Mulligan and Rodriguez, Director of Classification and Management Maiaga, and Unit Managers Stanley and Lizon in their individual capacities for damages and official capacities for injunctive relief.  Id. at 29.

       d.     Fourteenth Amendment Procedural Due Process

      Finally, Lewis challenges his placement in the SRG Program in March 2018 on procedural due process grounds, alleging that he did not receive a hearing

11

prior to his reclassification as an SRG member.  IRO at 8-10.  The court permitted this claim to proceed against Commissioners Cook and Semple, Director of Security Santiago, SRG Coordinators Aldi and Papoosha, and Director of Classification and Management Maiaga in their individual and official capacities.  Id. at 29.

> 2. Defendants' Motion for Summary Judgment (Doc. No. 56)

The defendants move for summary judgment on all counts. First, they contend that, with respect to Lewis' deliberate indifference claims, he failed to exhaust his administrative remedies.  Id. at 29.  Second, they challenge Lewis' substantive due process claims.  Id. at 16.  Third, they contest Lewis' procedural due process claims.  Id. at 19.  Finally, they assert that they are entitled to qualified immunity as to Lewis' substantive and procedural due process claims.  Defs.' Mem. at 21.

## III.   LEGAL STANDARD

A motion for summary judgment may be granted only where the moving party can establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Wright v. N.Y. State Dep't of Corr., 831 F.3d 64, 71-72 (2d Cir. 2016).  If the moving party satisfies this burden, the nonmoving party must set forth specific facts demonstrating that there is indeed "a genuine issue for trial." Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009).  A genuine issue exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Cross Commerce Media, Inc. v. Collective, Inc., 841 F.3d 155, 162 (2d Cir. 2016).  Unsupported allegations do not create a material issue of fact and cannot overcome a properly supported motion for summary judgment. See Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000).  In assessing the record to determine

whether there are disputed issues of material fact, the trial court must "resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought." LaFond v. Gen. Physics Servs. Corp., 50 F.3d 165, 175 (2d Cir. 1995).

## IV.    DISCUSSION

### A.    Fourteenth Amendment Substantive Due Process: Deliberate Indifference

#### 1.    Exhaustion of Deliberate Indifference Claims

Lewis' deliberate indifference claims challenge (1) the defendants' failure to protect Lewis after he warned them about the threat to his safety posed by Tracy Diaz, the gang member who broke Lewis' hand in September 2018, as well as (2) the defendants' disregard for his conditions of confinement at both Northern CI and MacDougall-Walker CI.  The defendants argue, however, that Lewis failed to exhaust his administrative remedies for any of his deliberate indifference claims.  Defs.' Mem. at 29.

Under the Prison Litigation Reform Act ("PLRA"), inmates must exhaust available administrative remedies before filing a federal lawsuit relating to prison conditions. See 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.").  The PLRA's exhaustion requirements apply to all claims regarding "prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).  To properly exhaust administrative remedies, inmates must comply with all procedural rules regarding the grievance process prior to

commencing an action in federal court.  See Woodford v. Ngo, 548 U.S. 81, 90–93 (2006).

However, an inmate need only exhaust administrative remedies that are "available." 42 U.S.C. § 1997e(a).  If administrative remedies are in fact unavailable, then an inmate's failure to exhaust may be excused.  See Ross v. Blake, 136 S. Ct. 1850, 1858 (2016).  Administrative remedies are unavailable under three circumstances: (1) the procedure "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief"; (2) the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use—i.e., some mechanism exists to provide relief, but no ordinary prisoner can navigate it"; and (3) "when prison administrators thwart inmates from taking advantage of it through machination, misrepresentation, or intimidation."  Id. at 1853–54.

### a.    Exhaustion of Deliberate Indifference Claim: Failure to Protect

Here, Lewis has not offered evidence that he exhausted his administrative remedies with respect to his claims that the defendants failed to protect him from Tracy Diaz.  Although Lewis submits an unanswered level-one grievance and two unanswered inmate request forms regarding Diaz, see Pl.'s Mem. at Exs. E, F, G, there is no indication that he ever filed a level-two grievance as necessary to fully exhaust DOC's administrative remedies.  See AD 9.6(6)(I), (K) (permitting the filing of a level-two grievance if a level-one grievance receives no response); Hesse's Decl. at Att. A; see also Gibson v. Goord, 280 F.3d 221, 223 (2d Cir. 2002) (concluding that an inmate had

failed to exhaust when he "had not pursued the available remedy of filing a 'level two grievance,' which is available when there is no response to a 'level one grievance.'").[6]

Nor has Lewis provided evidence that prison administrators "thwarted" him from using the grievance system or that the system was "opaque" or a "dead end" wherein officers consistently provided no relief.  See Ross 136 S. Ct. at 1853.  While he claims that the grievance procedure is "flawed and compromised by apparent understaffing and that grievances are often lost in the system", the record contains evidence that Lewis frequently used the grievance system, receiving responses to each of the seven level-one grievances and the six level-two grievances he submitted regarding his SRG status. See Saunders' Decl. at Att. A; Hesse's Decl. at Att. B.  Because Lewis failed to exhaust DOC's available administrative processes and has not come forward with evidence that any one of the three exceptions to exhaustion occurred, the court grants the defendants' Motion for Summary Judgment as to Lewis' Fourteenth Amendment deliberate indifference claim for failure to protect against Commissioner Semple, SRG Coordinators Aldi and Papoosha, Warden Mulligan, and Unit Manager Stanley.

> b.   Exhaustion of Deliberate Indifference Claim: Conditions of Confinement

Lewis has also failed to exhaust some of his claims regarding defendants' deliberate indifference to his conditions of confinement at MacDougall-Walker CI and Northern CI.  Lewis submitted two level-two appeals that identified specific restrictive

---

[6] The version of AD 9.6 at issue in Gibson, like the version at issue here, used permissive rather than mandatory language, stating that "an inmate may appeal to Level 2" if timely notice is not received. See Hanton v. Grotta, No. 3:97CV93(WIG), 2000 WL 303428, at *7 (D. Conn. Feb. 11, 2000), aff'd sub nom. Gibson v. Goord, 280 F.3d 221 (2d Cir. 2002).  Nonetheless, the Second Circuit affirmed the district court's conclusion that failure to pursue a level-two grievance when a level-one grievance received no response constituted failure to exhaust.

conditions to which he was subjected, stating that he was unable to access the law

library, have visitors, or make phone calls.  Hesse's Decl. at Att. B, IGP 141-19-163

(received Apr. 12, 2019), IGP 141-19-178 (received Apr. 12, 2019).  In none of his

grievances, however, did he mention many of the conditions that he notes in his

Complaint, including eating in a dirty cell; having no power; being limited to three

showers a week; stripping before leaving the cell; being confined to the cell for twenty-

three hours a day on weekdays and all weekend; being handcuffed and tethered when

outside of the cell; and never being able to clean his cell.  See Compl. at 41, 55.

Because Lewis did not exhaust his administrative remedies with regards to his

claims about the defendants' deliberate indifference to any conditions other than Lewis'

inability to access the law library, have visitors, or make phone calls, the court cannot

reach the unexhausted claims.  See 42 U.S.C. § 1997e(a).  However, the court will

consider whether the defendants are entitled to summary judgment on their merits

argument with respect to Lewis' assertions that they were deliberately indifferent in

denying him access to the law library, visitors, and phone calls.

2.   Deliberate Indifference: Lack of Access to Law Library, Visitors, and
Phone Calls

To determine whether a defendant has been deliberately indifferent toward a

prisoner's conditions of confinement, courts in this Circuit apply a two-pronged test.

First, the plaintiff must "establish an objective deprivation" by showing "that the

conditions, either alone or in combination, pose an unreasonable risk of serious damage

to his health, which includes the risk of serious damage to physical and mental

soundness."  Darnell v. Pineiro, 849 F.3d 17, 30 (2d Cir. 2017) (internal quotation marks

and citations omitted).  Second, the plaintiff must establish the defendant's "deliberate indifference" to any objectively serious condition of confinement.

Under the first prong, objective deprivation, "[p]risoners may not be deprived of their basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety—and they may not be exposed to conditions that pose an unreasonable risk of serious damage to [their] future health."  Id. (citing Jabbar v. Fischer, 683 F.3d 54, 57 (2d Cir. 2012) (citation and internal quotation marks omitted)).  Multiple conditions may, together, "rise to the level of a constitutional violation," but such conditions should be aggregated "only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise." Id. (quoting Walker v. Schult, 717 F.3d 119, 125 (2d Cir. 2013)).

Although the exhausted conditions of which Lewis complains—limited phone calls, restricted visitation, and a lack of access to the law library—are harsh, they do not rise to a deprivation of a basic human need and therefore are not unconstitutional. See Doyle v. Santiago, No. 3:19-CV-901 (MPS), 2019 WL 5298147, at *8 (D. Conn. Oct. 18, 2019) (holding that no objective deprivation occurred where plaintiff was allowed only one hour of outdoor recreation per weekday; visits only from immediate family; limited telephone calls; no access to books; and no programming); see also Pagan v. Dougherty, No. 3:18-cv-1668(VLB), 2019 WL 2616975 (D. Conn. June 26, 2019) (holding that no Eighth Amendment violation took place where the plaintiff was allowed limited phone calls; restricted visits from friends and family; eligibility for parole; and limited access to educational and vocational services).

Because the evidence of the record could not support a reasonable jury's finding that Lewis suffered an objective deprivation, the defendants' Motion for Summary Judgment is granted as to Lewis' Fourteenth Amendment deliberate indifference claims related to conditions at MacDougall-Walker CI (against Commissioners Cook and Semple, Director of Security Santiago, Director of Classification and Management Maiaga, SRG Coordinators Aldi and Papoosha, Warden Mulligan, and Unit Manager Stanley) and at Northern CI (against Commissioners Cook and Semple, Director of Security Santiago, Director of Classification and Management Maiaga, SRG Coordinators Aldi and Papoosha, Warden Rodriguez, Unit Manager Lizon, and Captain Jackson).

B.    Fourteenth Amendment Substantive Due Process: Punitive Nature of Confinement and Placement in SRG Program

Lewis alleges that Commissioners Cook and Semple, Director of Security Santiago, SRG Coordinators Aldi and Papoosha, Wardens Mulligan and Rodriguez, Director of Classification and Management Maiaga, and Unit Managers Staley and Lizon subjected him to punishment during his confinement at MacDougall-Walker and Northern.  IRO at 10-11.  The defendants argue that Lewis cannot establish a substantive due process claim because "there are legitimate governmental objectives" to the conditions imposed on Lewis during his confinement.  Defs.' Mem. at 18.

"[A] detainee may not be punished prior to an adjudication of guilt in accordance with due process of law."  Bell v. Wolfish, 441 U.S. 520, 535 (1979); see also Darnell, 849 F.3d at 29 ("[P]retrial detainees have not been convicted of a crime and thus 'may not be punished in any manner—neither cruelly and unusually nor otherwise.").  Thus, to determine whether restrictions imposed on a pretrial detainee violate the detainee's

substantive due process rights, "[a] court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose" Bell, 441 U.S. at 538.

The Second Circuit has "found measures similar to Administrative Segregation not to violate substantive due process where prison officials subjected pretrial detainees to such measures in response to specific evidence that those detainees posed a risk to institutional security, and where the measures were not excessive in relation to that purpose." Almighty Supreme Born Allah v. Milling, 876 F.3d 48, 55–56 (2d Cir. 2017) (gathering cases) (hereinafter "Allah"). Two factors are thus relevant to whether Lewis' confinement was punitive: first, whether his redesignation to SRG status upon his readmission to DOC was based solely on his prior status as an SRG member, and second, whether the restrictive conditions imposed on Lewis during his confinement were reasonably related to legitimate government purposes and not excessive relative to these purposes. The court considers each in turn.

a.     Punitive: Redesignation to SRG Status

Lewis alleges that there was no legitimate safety or security justification for placing him in the SRG Program based solely on the fact that he had previously been placed in the Program. Compl. at ¶ 37. In Allah, the Second Circuit determined that prison officials violated a pretrial detainee's right to substantive due process when they placed him in Administrative Segregation "solely on the basis of his prior assignment to . . . the . . . program during a prior term of incarceration" without any "individualized consideration of [the plaintiff's] circumstances", requiring him "to be placed in Administrative Segregation regardless of his actual threat, if any, to institutional security." Id. at 57.

Here, the parties dispute whether the decision to return Lewis to the SRG Program upon his readmission was made pursuant to an individualized consideration of Lewis' circumstances. Coordinator Aldi, who was responsible for deciding whether Lewis would continue on SRG status, testifies that he "decided to continue Mr. Lewis' placement on SRG status based upon a number of factors", including the fight that led to his initial plea and designation as an SRG Threat Member; the short amount of time that had passed since Mr. Lewis discharged from DOC custody (six months); his SRG status history and the fact that he had never successful completed the requirements for removal from the Program; his numerous disciplinary reports while on SRG status; his two guilty pleas for SRG affiliation while on SRG status; and the lack of indication that Lewis was no longer involved with SRG activity. Aldi's Decl. at ¶¶ 20-31. In addition, the 90-Day Review form, which Lewis signed, indicates that a review of Lewis' status did take place. See Tardif's Decl. at Att. A.  While the review form does not list each of the reasons for Lewis' designation, it states that "this decision was based on a review of your Security Risk Group file." Id.

Lewis alleges in his Complaint that he was automatically placed in the SRG Program upon his March 2018 return to DOC because of his prior placement in the Program.  Compl. at ¶ 36.  However, he provides no evidence to support this allegation, thus, there is no genuine issue of material fact.  See Weinstock, 224 F.3d at 41. Unlike the officials in Allah, the defendants in this case have provided evidence that an individualized assessment of Lewis' circumstances took place, satisfying his right to substantive due process with regard to his re-designation as an SRG member.

b.    Punitive: Conditions of Confinement

Lewis also challenges the restrictive and punitive conditions of his confinement at MacDougall-Walker and Northern.  In Allah, the Second Circuit explained that, even if prison officials "adequately considered [the plaintiff's] disciplinary history" when placing a pretrial detainee on a restrictive status, "it is not clear that [the plaintiff's] placement would be constitutional" as "a restriction related to a legitimate goal such as institutional security will still be punitive if it is excessively harsh." 876 F.3d at 57. There, the court questioned, in dicta, whether some conditions, including solitary confinement for twenty-three hours per day, showering in leg restraints, and being denied access to programming, "although plausibly related to security concerns in general, were so excessively harsh as to be punitive."  Id.  While generally courts will be "highly deferential to judgments about the conditions of confinement necessary to protect inmates and staff . . . from particularly dangerous individuals, even in pretrial detention", "prison officials should be prepared to articulate actual reasons for imposing seemingly arbitrary and undoubtedly harsh measures on individuals who have not been convicted of a crime."  Id.  (explaining that Bell, 441 U.S. 520, "demands as much").

Both parties agree that, in Phase One of the SRG Program, inmates are strip-searched before recreation and placed in restraints before any out-of-cell activity.  Defs.' L.R. Stmt. at ¶¶ 52, 54; Pl.s' L.R. Stmt. at ¶¶ A52, A54.  There is no group programming.  Defs.' L.R. Stmt. at ¶ 55; Pl.s' L.R. Stmt. at ¶ A55.  In Phase Two, inmates receive only one hour of out-of-cell recreation time per day, along with three showers, three phone calls, and two noncontact visits per week.  Defs.' L.R. Stmt. at ¶ 38; Pl.s' L.R. Stmt. at ¶¶ A38.  Inmates are limited to five cubic feet of personal property, and they cannot have televisions.  Defs.' L.R. Stmt. at ¶ 38; 45; Pl.s' L.R. Stmt.

at ¶¶ A38; 45.  Lewis further asserts that there is no meaningful recreation and essential religious needs are denied.  Pl.'s L.R. Stmt. at 16.

However, unlike the defendants in <u>Allah</u>, the defendants here articulate "actual reasons" for the unquestionably harsh restrictions imposed on SRG-designated inmates like Lewis.  <u>See Allah</u>, 876 F.3d at 57.  The limitations on out-of-cell time are designed to "limit the amount of out-of-cell movement in the SRG unit."  Defs.' L.R. Stmt. at ¶ 39; Pl.'s L.R. Stmt. at ¶ A39.  This prevents communication between highly organized SRGs, which "thrive when their members can effectively communicate with one another."  Defs.' L.R. Stmt. at ¶ 40.  Limiting phone calls and constraining visits to family members serves the same goal of ensuring that "inmates are not engaging in SRG related communications", preventing SRGs from organizing.  <u>Id.</u> at ¶ 44.

In Phase One, inmates wear restraints outside of their cells and do not participate in group programs because Phase One inmates have "demonstrated violent behavior toward staff or other inmates", creating a security risk.  <u>Id.</u> at ¶ 53.  The strip searches "ensure that inmates are not carrying any weapons or contraband when they are out of their cells.  <u>Id.</u>; <u>see, e.g.</u>, <u>Bell</u>, 441 U.S. at 558-60 (holding that conducting body cavity searches of pretrial detainees after every contact visit with a person from outside the institution are not punitive).  Likewise, limits on the amount of property in an inmate's cell "make[ ] it more difficult for inmates to hide weapons or other contraband in their cells." Defs.' L.R. Stmt. at ¶ 45.

The defendants have come forward with evidence that the constraints facing Lewis are rationally related to the institutional goals of reducing SRG activity and maintaining security and are not excessively harsh.  Lewis has not contested the

defendants' evidence with his own evidence upon which a reasonable jury could find that the conditions were unrelated to a legitimate government interest or were excessively harsh.  Therefore, the defendants' Motion for Summary Judgment is granted as to the Fourteenth Amendment substantive due process claims for punitive conditions of confinement against Commissioners Cook and Semple, Director of Security Santiago, SRG Coordinators Aldi and Papoosha, Wardens Mulligan and Rodriguez, Director of Classification and Management Maiaga, and Unit Managers Stanley and Lizon.

C.     Fourteenth Amendment Procedural Due Process: Reassignment to SRG Status

Lewis contends that Commissioners Cook and Semple, Director of Security Santiago, SRG Coordinators Aldi and Papoosha, and Director of Classification and Management Maiaga violated his Fourteenth Amendment due process rights by failing to follow proper procedures and provide him a hearing before designating him as an SRG Member in March 2018.  IRO at 8; Pl.'s Mem. at 1; Pl.'s L.R. Stmt. at 13.  The defendants argue that Lewis cannot establish a procedural due process claim because Lewis received notice and the opportunity to present his views to Coordinator Aldi before being placed on continued SRG status.  Defs.' Mem. at 10.

Lewis was a pretrial detainee when he was placed on SRG status upon readmission to DOC in 2018.  Compl. at ¶ 33.  "[P]rocedural due process requires that pretrial detainees can only be subjected to segregation or other heightened restraints if a predeprivation hearing is held to determine whether any rule has been violated." Johnson v. Maha, 606 F.3d 39, 41 (2d Cir. 2010) (citing Benjamin v. Fraser, 264 F.3d 175, 189-90 (2d Cir. 2001)).  Different procedural requirements apply depending on

whether the increased restraints are imposed for punitive or administrative purposes. Benjamin, 264 F.3d at 190; see also Bolden v. Alston, 810 F.2d 353, 357 (2d Cir. 1987) ("the level of procedural protection [required by Due Process] differs according to the purpose of the confinement.").

If detention is punitive, then an inmate must be provided with the procedural protections established in Wolff v. McDonnell, 418 U.S. 539, 561-70 (1974), namely, "written notice, adequate time to prepare a defense, a written statement of the reasons for action taken, and a limited ability to present witnesses and evidence." Benjamin, 264 F.3d at 190. If, on the other hand, detention is for administrative reasons, the less stringent procedures delineated in Hewitt v. Helms apply. 459 U.S. 460 (1983). An inmate detained for administrative purposes need only "receive some notice of the charges against him and an opportunity to present his views." Id. at 476.

The defendants suggest that the more lenient Hewitt standard should apply to Lewis' readmission to the SRG Program, as Lewis' placement on SRG status was "administrative in nature rather than punitive." Defs.' Mem. at 19. In Hewitt, the Supreme Court explained that only "an informal, nonadversary evidentiary review" is required "for the decision that an inmate represents a security threat." Id. at 476. In Wilkinson v. Austin, the Supreme Court applied the Hewitt standard to a due process claim asserted by inmates who had been classified for indefinite placement in a high security state prison for safety and security, rather than disciplinary reasons. 545 U.S. 209, 229 (2005). Similarly, the Second Circuit held that only Hewitt procedures were required after a pretrial detainee was implicated in a deadly assault, as it was "reasonable to isolate [the plaintiff] for his own protection and that of the prison

24

population."  Taylor v. Comm'r of New York City Dep't of Corr., 317 F. App'x 80, 82 (2d Cir. 2009) (summary order).

Here, there is nothing in the record upon which a reasonable juror could find that Lewis was returned to the SRG Program in 2018 for punitive rather than administrative reasons.  Coordinator Aldi, who was responsible for deciding whether Lewis would continue on SRG status, testifies that Lewis' past and probable present involvement with SRG activity formed the basis for his decision.  See Aldi's Decl. at ¶¶ 20-31. Inmates are designated to the SRG Program to limit communication and organization among SRG members.  Defs.' L.R. Stmt. at ¶ 39; Pl.'s L.R. Stmt. at ¶ A39. As was the case in Taylor, the defendants have provided evidence that the administrative decision to isolate SRG members, including Lewis, is reasonable for the protection of the prison population.  See Taylor, at 317 F. App'x at 82.  Lewis has offered no evidence upon which a reasonable jury could find otherwise.  Thus, the Hewitt standard for procedural protections applies to Lewis' readmission to the SRG Program.  459 U.S. 460.

Under Hewitt, "[a]n inmate must merely receive some notice of the charges against him and an opportunity to present his views [orally or in writing] to the prison official charged with deciding whether to transfer him to administrative segregation." 459 U.S. at 476.  "Due process is violated only when the opportunity to be heard is not provided within a reasonable time of the commencement of administrative segregation." Rodriguez v. Phillips, 66 F.3d 470, 480 (2d Cir. 1995) (determining that an opportunity to be heard within three days of administrative segregation did not violate due process); see also Hewitt, 459 U.S. at 476 (an opportunity to be heard five days after transfer to administrative segregation did not violate due process).

Here, the record indicates that a 90-Day Review of Lewis' file took place, and Lewis received notice of the charges against him. Although Lewis alleges in his Complaint that he received no notice of his 90-Day Review, Compl. at ¶ 35, he signed an SRG Member 90-Day Review Notification form dated March 16, 2018, indicating that he was aware of the review. Tardif's Decl. at Att. A. Lewis provides no support for his allegation that he was not notified of the review.

As to Lewis' opportunity to be heard, the record is less clear. There is, as Lewis contends, no indication that Lewis received a full hearing in March 2018. See Pl.'s L.R. Stmt. at ¶ B13. However, under Hewitt, Lewis' due process rights require only that he had the opportunity to present his views orally or in writing to Commissioner Aldi, the official determining his SRG status. See 459 U.S. at 476. It is unclear from the record, though, whether Lewis received any opportunity to convey his views to Commissioner Aldi. Lewis' testimony is mixed in this regard, as he first states that he "didn't have a meeting" with the official who delivered his 90-Day Review Notification form, Officer Tardif. Pl.'s Depo. at 44. Then, Lewis adds "I don't remember talking to him, but if I sign[ed] it maybe I did." Id.

The defendants, however, offer no proof whatsoever that Lewis was provided an opportunity to be heard. Officer Tardif does not recall meeting with Lewis. Defs.' L.R. Stmt. at ¶ 18. Likewise, Coordinator Aldi does not remember whether Lewis provided a statement opposing his continued placement on SRG status. Id. at ¶ 20. Neither the SRG Member 90-Day Review Notification form nor the SRG Member 90-Day Review form indicates whether Lewis was permitted to offer his views on his redesignation to RSG status. Tardif's Decl. at Att. A.

Because the defendants have offered no evidence that Lewis received an opportunity to be heard, a genuine issue of material fact exists as to whether Lewis' right to procedural due process was violated.

          1.    Qualified Immunity

The defendants contend they are entitled to qualified immunity with respect to Lewis' procedural due process claims related to his readmission to the SRG Program. See Defs.' Mem. at 21-25.[7]  Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009).  However, the defendants acknowledge that a reasonable person would have known the Hewitt procedures should have been adhered to.  Defs.' Mem. at 21 ("it was objectively reasonable for the DOC defendants to conclude that the informal Hewitt procedures provided were appropriate under the circumstances.").  While the defendants argue that nothing more than an "informal hearing process that included notice and an opportunity to present his side to the decision maker" was required, the record does not show that they provided Lewis with even these minimal, informal safeguards.  Without evidence that Lewis had an opportunity to be heard, the defendants cannot show that they have satisfied Hewitt's established procedural requirements.  See 459 U.S. at 476.  The defendants are not entitled to qualified immunity for their purported failure to provide adequate Hewitt procedures.

---

[7] The defendants also assert that they are entitled to qualified immunity for Lewis' substantive due process claims, Defs.' Mem. at 25-29. Because the court has already granted summary judgment on these claims, the court will not address this argument.

Given that a genuine issue of material fact exists as to whether Lewis received an opportunity to be heard, the defendants' Motion for Summary Judgment is denied as to Lewis' Fourteenth Amendment procedural due process claims against Commissioners Cook and Semple, Director of Security Santiago, SRG Coordinators Aldi and Papoosha, and Director of Classification and Management Maiaga in their individual and official capacities.

## V.      CONCLUSION

For the reasons stated above, the defendants' Motion for Summary Judgment (Doc. No. 56) is granted in part as to (1) Lewis' Fourteenth Amendment substantive due process claims regarding his allegedly punitive conditions of confinement at MacDougall-Walker CI and Northern CI against Commissioners Cook and Semple, Director of Security Santiago, SRG Coordinators Aldi and Papoosha, Wardens Mulligan and Rodriguez, Director of Classification and Management Maiaga, and Unit Managers Stanley and Lizon in their individual and official capacities; (2) Lewis' Fourteenth Amendment substantive due process claims regarding officials' deliberate indifference to his conditions of confinement at Northern CI and MacDougall-Walker CI against Commissioners Cook and Semple, Director of Security Santiago, Director of Classification and Management Maiaga, SRG Coordinators Aldi and Papoosha, Warden Mulligan, Warden Rodriguez, Unit Manager Lizon, Captain Jackson, and Unit Manager Stanley in their individual and official capacities; and (3) Lewis' Fourteenth Amendment deliberate indifference to safety or failure to protect claims against Commissioner Semple, SRG Coordinators Aldi and Papoosha, Warden Mulligan, and Unit Manager Stanley in their individual capacities.

28

The defendants' Motion for Summary Judgment is denied in part as to Lewis' procedural due process claims against Commissioners Cook and Semple, Director of Security Santiago, SRG Coordinators Aldi and Papoosha, and Director of Classification and Management Maiaga in their individual and official capacities.

**SO ORDERED.**

Dated at New Haven, Connecticut this 30th day of September 2021.

  /s/ Janet C. Hall
Janet C. Hall
United States District Judge